## In re DEUEL.

(Supreme Court, Appellate Division, First Department. July 8, 1908.)

1. JUDGES—REMOVAL—PROCEEDINGS.

Const. art. 6, § 17, provides that justices of inferior courts not of record may be removed for cause after due notice and an opportunity of being heard. Laws 1895, p. 1294, c. 601, § 28, provides that justices of the Court of Special Sessions may be removed for cause after due notice and an opportunity to be heard. *Held* that, on an application for the removal of a justice of the Court of Special Sessions, the court can act upon no charges, unless the respondent has had notice thereof and an opportunity to be heard, although neither the Constitution nor the statute specifies grounds for removal.

2. SAME—GROUNDS FOR REMOVAL.

Greater New York Charter, Laws 1901, p. 605, c. 466, § 1416, provides that no justice of the Court of Special Sessions shall receive to his own use any fees or perquisites of office, or hold any other public office or carry on any business or practice as an attorney in any court in this state, or act as referee or receiver, but each justice shall devote his whole time and capacity, so far as public interests demand, to the duties of his office. *Held*, that a persistent and intentional violation of the prohibition contained in this statute is a sufficient cause for removal.

3. SAME—"CARRY ON A BUSINESS."

Greater New York Charter, Laws 1901, p. 605, c. 466, § 1416, forbids a justice of the Court of Special Sessions to "carry on any business," but he shall devote his whole time and capacity, so far as public interests demand, to the duties of his office. *Held*, that to "carry on a business" implies such a relation to the business as identifies a person with it, and imposes upon him some duty or responsibility in connection with its management, and the prohibition is not violated by one acting as vice president of a corporation where the incumbent of that office has no specific duties in relation to it, and is not actively engaged in the conduct of the business of the corporation, and is not responsible either to the corporation or its

stockholders for the conduct or management of the business, and does not actively interfere in any way in relation to it.

4. SAME.

In a proceeding for the removal of a judge of the Court of Special Sessions for a violation of the provision in Greater New York Charter, Laws 1901, p. 605, c. 466, § 1416, providing that no justice shall "carry on any business," in which the justice is charged with editing and managing a certain publication, the question whether the editing and managing of such publication is an enterprise that merits the contempt of all decent minded men, and is disreputable in its character, will not be considered, where the character of the publication is stated in connection with the charge of a violation of section 1416, and the evidence shows that the justice is not actively engaged in the conduct of such business.

William Travers Jerome, James W. Osborne, and Edward M. Shepard make application for the removal of Joseph M. Deuel from the office of justice of the Court of Special Sessions of the City of New York for the First Division. Application denied, and proceeding dismissed.

See 116 App. Div. 512, 101 N. Y. Supp. 1037.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Howard S. Gans, for petitioners.

Martin W. Littleton, Charles L. Craig, and Frederick Allis, for respondent.

INGRAHAM, J. Charges against the respondent were submitted to this court upon the petition of William Travers Jerome, James W. Osborne, and Edward M. Shepard, attorneys and counsellors at law, one of the petitioners being the district attorney of New York county, and the other petitioners being counsel for the defendant in a criminal action brought in the Supreme Court in which the respondent appeared as a witness, and the charges were based upon the testimony of the respondent in that action. The petition alleged that the respondent is a justice of the Court of Special Sessions of the City of New York, for the First Division, having been appointed on or about January 1, 1904, and, as such justice, was forbidden by law to carry on any business; that the respondent was from the 1st of July, 1895, to the 1st of January, 1904, a city magistrate of the city of New York for the First Division, and as such city magistrate was forbidden by law from carrying on any business. The petitioners then charge that the respondent since the 1st of January, 1905, has been carrying on, and from time to time has carried on, business, and has been engaged in and carrying on various businesses and business enterprises, among others the following, to wit: The business of owning, managing, editing, printing, canvassing for, and selling certain printed publications known as "Town Topics," "The Smart Set," and "Fads and Fancies"—and the business of owning, managing, directing, and controlling certain corporations known as the "Town Topics Publishing Company," the "Ess Ess Publishing Company," the "Smart Set Publishing Company," and the "Printers' & Publishers' Realty Company." It is further alleged that the Town Topics Publishing Company was engaged in the publica-

tion and sale of a certain weekly paper, known as "Town Topics," wherein there was repeatedly and continuously published and printed abusive, salacious, scurrilous, scandalous, and libelous matter, as the said respondent well knew; that it was a part of the business carried on by the respondent, and one of the functions performed by him in carrying on the said business of publishing, editing, and managing the said "Town Topics," and managing and controlling the said Town Topics Publishing Company to read the said abusive, salacious, scurrilous, scandalous, and libelous matter so published as aforesaid, and to read the same proposed to be published in the said publication, and so to edit, phrase, and modify the matter so proposed to be published as to decrease the risk and dangers of civil or' criminal liability which the authors thereof and the said corporation were incurring, or might incur, by reason of the publication of such matter. It was further alleged that it was a part of the business carried on by the said corporation and by divers persons associated therewith to solicit, urge, coerce, and compel the payment of large sums of money to them, or to the said companies, or to persons associated therewith, by means of overt or covert threats; and that it was the custom in the conduct of the business of the said publishing company to cause to be published of persons thus refusing to pay, matter that was derogatory, and to publish matter in praise or favorable comment upon persons thus paying, all of which the respondent at all of the times mentioned either knew or should have known, and by the exercise of due care and diligence could have known.

The gravamen of this charge seems to be that the respondent was carrying on, during the period for which he had been a justice of the Court of Special Sessions, a business in violation of section 1416 of the charter of Greater New York (chapter 466, p. 605, Laws 1901). The relator was charged with owning, managing, editing, printing, canvassing for, and selling certain printed publications known as "Town Topics," "The Smart Set," and "Fads and Fancies," and the business of owning, managing, directing, and controlling certain corporations specified. These charges having been served upon the respondent, he submitted an answer. The evidence in relation thereto was taken before a referee, and the question was then presented to the court for such action as was required.

Section 17 of article 6 of the Constitution provides that:

"Justices of the peace and judges or justices of inferior courts not of record, and their clerks may be removed for cause, after due notice and an opportunity of being heard, by such courts as are or may be prescribed by law."

Section 28, c. 601, p. 1295, Laws 1895, provides that:

"The justices of the Court of Special Sessions and the clerks of said court appointed pursuant to this act may be removed for cause after due notice and an opportunity to be heard * * * by the Appellate Division of the Supreme Court in the First Department."

Upon an application of this character, the court is required to investigate charges made against a judicial officer. In neither the Con-

stitution nor the statute is the ground for removal specified; but the court can act upon no charges, unless the respondent has had notice thereof, and an opportunity to be heard. We are confined, therefore, in determining this question to an investigation of the charges preferred against the respondent, and to determine whether those charges, if proved, are a sufficient cause for his removal. Section 25, c. 601, p. 1294, Laws 1895, re-enacted as section 1416 of the City Charter of Greater New York, provides that:

"No person shall be appointed to the office of justice of the Court of Special Sessions in the city of New York, unless he shall be a resident of said city and of the division of the city for which he shall be appointed; nor unless he shall have been admitted to practice as an attorney and counsellor at law in the courts of this state at least ten years prior to the date of such appointment. No such justice shall receive to his own use any fees or perquisites of office; nor shall any such justice hold any other public office, or carry on any business, or practice as an attorney or counsellor at law in any court in this state, or act as referee or receiver; but each such justice shall devote his whole time and capacity, so far as public interests demand, to the duties of his office."

I have no doubt but that a persistent and intentional violation of the prohibition contained in this statute would be a sufficient cause for removal. The object of this statute is not only to insure the prompt and efficient discharge of the duties of a justice of the Court of Special Sessions, but also to prevent a justice of the court from making such connections and having such relations with others as would justify a question as to the impartial and proper performance of his judicial duties. The justice is required to be an attorney of 10 years' standing, and, upon his acceptance of the office, he is required to relinquish the practice of the law, is prohibited from acting as referee, or receiver. He can hold no other public office, can carry on no business, but is required to devote his whole time and capacity to the duties of his office. In the Standard Dictionary "To carry on" is defined: "Keep up; keep going; maintain; manage." And in the Century Dictionary: "To manage or be engaged in, continue to prosecute, keep in progress." And I think, to bring a person within the prohibition against carrying on a business, there must be such a relation to the business as imposes upon the person charged an obligation or responsibility to it, a responsibility for its management, the assumption of its control, or an obligation to perform duties in relation to it. The term, "to carry on a business," implies such a relation to the business as identifies the person with it, and imposes upon him some duty or responsibility in connection with its management. It is much easier to illustrate the distinction by concrete instances than by a general definition. I assume that it would not be a violation of this statute for a justice of the court to accept a position as executor or trustee of an estate, although that estate was connected with a going business so long as the executor or trustee was not the active manager of such a business. A trustee or executor could settle the estate, could invest the trust property and collect the income, and perform such incidental duties in relation to the estate without it being said that he was engaged in carrying on business, although he would be entitled to his fees for the performance of such

duties. So it seems to me that a person could be a director or officer of a corporation so long as the duties of his office did not impose upon him the duty to manage the corporation of which he was an officer. In other words, he could be an executor, trustee, director, or officer without carrying on business; but in either one of these positions the duties which he was required to perform by accepting the office might be such as would require him to carry on a business, and be charged with the management and control of it, and to be so connected with it that he could be said to carry on the business. It seems to me that it would be a violation of this statute for one of the justices of the Court of Special Sessions to be a partner in any active business, although he could say that he did not devote thereto any of the time that the public interests required that he should devote to his office as such justice. It would be a violation of this statute for a justice of the Court of Special Sessions to accept a position as an officer of a corporation engaged in an active business which required that he should take charge of or manage such business or exercise control over it. It would be a violation of his duty to accept an employment in connection with an active business which would require him to perform duties in relation to it; but, on the other hand, the mere acceptance of an office in a corporation which conducted a business, the duties of which office did not require him to assume any control over it or to direct its management, or to be responsible for the business that it conducted, would not be a violation of this provision.

It would serve no useful purpose to analyze this voluminous testimony, and I shall attempt to do no more than to state the conclusion to which I have arrived. I do not find it proved that this relator accepted any office in this corporation that imposed upon him any active duties in relation to the corporation itself, or the business that it conducted. He was vice president of the corporation, but charged with no specific duties in relation to it. There is no evidence that he actively engaged in the conduct of the business of the corporation; that he was responsible, either to the corporation or to its stockholders, for the conduct or management of the business; or that he actively interfered in any way in relation to it. In fact, the evidence is all the other way. Certainly, if no one did anything more for this business than the respondent did, or was under obligation to do, the business would not have been carried on at all, and the conclusion that I have arrived at is that the charge of a violation of section 1416 of the charter is not sustained.

Counsel for the petitioners also insist that the respondent should be removed because no man may be deemed fitted to fulfill the functions of a judicial officer who while in office deliberately and persistently engages in an enterprise that merits and invokes the contempt of all decent-minded men; and this is based upon the fact that the publications with which the respondent has been connected are of such a disreputable character that they are a violation of both the civil and criminal law. I am doubtful as to whether these charges involved anything more than a charge of violating section 1416 of the charter as engaging in business in violation of the prohibition it contains. From the nature of the charges, it would appear that the character

of the business was simply stated in connection with the charge of a violation of section 1416 of the charter. It is not necessary to examine the nature of these publications, or express an opinion as to their decency or respectability. If the respondent was directly connected with these publications and responsible for their contents, or for the acts of those engaged in the publications, it might well be that such conduct was inconsistent with the judicial character, and would be inconsistent with his continuing to occupy the position he does. But, considering his relation to the corporation and its publication and his explanation as to his connection with it which the referee appears to have credited, I do not think that we are justified in holding that the respondent's relation with this corporation or its publication was a sufficient cause to justify his removal from office.

My conclusion, therefore, is that the application should be denied and the proceeding dismissed. All concur.